# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**MICHAEL GLEN BURNS**                                                                                           **PLAINTIFF**

**V.**                                      **NO. 2:19CV00105 KGB/JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                              **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Michael Glen Burns, applied for disability benefits on August 23, 2013, alleging a disability onset date of October 26, 2009. (Tr. at 9). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 9-19). The Appeals Council denied his request for review. (Tr. at 1).

The United States District Court for the Eastern District of Arkansas twice remanded this case, for further consideration of treating physician opinions and severity of impairments, development of the record, and to order a consultative examination. (Doc. No. 9 at 1-2). After a third hearing, the ALJ ordered a consultative examination to develop the record regarding physical

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

limitations. (Tr. at 756, 1453-1458). The attorney for Burns filed written exceptions to the proffered report form the consultative examiner and asked for a supplemental hearing to cross examine the doctor. (Tr. at 1259-1265). The ALJ denied that request and denied the application for benefits. (Tr. at 756-770). The Appeals Counsel declined to review the ALJ's decision, and so the ALJ's decision now stands as the final decision of the Commissioner. Burns has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision for an immediate award of benefits.

## II. **The Commissioner's Decision:**

The ALJ found that Burns had not engaged in substantial gainful activity since the amended alleged onset date of October 26, 2009. (Tr. at 759). At Step Two, the ALJ found that Burns had the following severe impairments: ligament injury to the left ankle status post surgeries, degenerative disc disease, right elbow bursitis, mood disorder, anxiety disorder, headaches, and insomnia. *Id.*

After finding that Burns's impairment did not meet or equal a listed impairment (Tr. at 759), the ALJ determined that Burns had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) he needs the option to alternate between sitting and standing, at will; (2) he can occasionally balance; (3) he cannot perform around work hazards; (4) he is able to perform work where interpersonal contact is incidental to the work performed; (5) the complexity of work tasks can be learned by demonstration or repetition within 30 days, contain few variables, and require little judgment; and (6) the supervision required is simple, direct, and concrete. (Tr. at 761).

The ALJ determined that Burns was unable to perform any past relevant work. (Tr. at 768).

Relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Burns's age, education, work experience and RFC, jobs existed in the national economy which he could perform. (Tr. at 769). Consequently, the ALJ found that Burns was not disabled. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B. Burns's Arguments on Appeal

Burns argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ did not give proper weight to the multiple opinions of Dr. Sunesh Banaji, M.D., and that the record was not fully developed. For the following reasons, the Court agrees with Burns.

Burns injured his left ankle in 2009. (Tr. at 763). Dr. Banaji treated Burns conservatively and recommended exercise. *Id.* An MRI of the left ankle in 2012 showed a partial ligament tear

and tendonitis and arthritis. *Id*. Burns said that steroid injections were not helpful. *Id*. An MRI in 2015 showed tendon and ligament partial thickness tear with joint effusion and disruption of the distal membrane. (Tr. at 605-606). Burns walked with a limp, and clinical exams showed pain with range of motion.

Over many years, Dr. Banaji examined and treated Burns. He noted chronic severe pain, swelling, and instability, and Dr. Banaji recommended that Burns use an assistive device to walk and elevate his leg as needed. (Tr. at 646-656, 1240-1341, 1268-1432). He recommended ice and rest. *Id.* Dr. Banaji said that Burns would likely need surgery on his ankle. (Tr. at 656).

Burns wore a hard-shell brace. (Tr. at 809). He said his ankle swelled at least four times a week, at which time he had to elevate his leg. (Tr. at 814). He explained that he took hydrocodone every day. (Tr. at 812).

Dr. Banaji provided three medical source statements about Burns's ankle condition. In the first one, dated August 8, 2014, he said that Burns could sit for at most four hours a day (which means less than sedentary work). (Tr. at 585). Dr. Banaji said that Burns would be limited in lifting and walking, and could only occasionally stoop, kneel, crawl, bend, and balance. *Id*. In May 2016, Dr. Banaji sent a letter stating that, due to multiple ligament and tendon tears in the left ankle, Burns would have problems in stooping and bending, and he would need an assistive device. (Tr. at 752). Dr. Banaji said that chronic symptoms were anticipated. *Id*. He concluded by saying that Burns was unable to work. *Id*. Dr. Banaji's third opinion was a letter dated October 30, 2018, stating that Burns had failed multiple ankle surgeries and that Burns was unable to work. (Tr. at 1421).

Dr. Tara Oetken, M.D., performed a consultative examination on Burns in March 2019.

4

(Tr. at 1453-1456). She said that Burns could perform sedentary work, but at the same time, she said that he could sit for only five hours a day. *Id.* Sedentary work requires the ability to sit for six hours in a regular work day. *See Social Security Ruling* 96-9p; https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html. For this reason, Dr. Oetken's report was inconsistent. Dr. Oetken also assigned limitations posturally: Burns could engage in only occasional climbing, stooping, kneeling, crouching, crawling, and balancing. (Tr. at 1460).

The non-examining state agency doctors found no severe impairments of the ankle in 2014. (Tr. at 65, 110). This was before much of the treatment with Dr. Banaji and without the benefit of any of Dr. Banaji's medical source statements.

The ALJ ignored Burns's attorney written exceptions to Dr. Oetken's report and he declined the attorney's request to have a supplemental hearing to question Dr. Oetken. (Tr. at 756, 1259-1265). This certainly would have been appropriate given that Dr. Oetken contradicted herself by saying Burns could perform sedentary work but could only sit for five hours a day. Also, the ALJ neglected to include in the RFC the limitations in climbing, stooping, kneeling, crouching, and crawling that Dr. Oetken assigned. These limitations were consistent with those of Dr. Banaji, which he assigned in 2014. Dr. Banaji also said that Burns would need to elevate his leg, and Burns himself said that he had to do that at least four times a week. When the ALJ asked the VE if jobs would be available for a person having to elevate his leg for 20% of the workday, the VE said no. (Tr. at 820).

The ALJ erred by failing to include all of the credible postural limitations in the RFC. He erred by failing to allow interrogation of the medical expert by Burns's attorney. And he erred by giving little weight to the opinions of Dr. Banaji. Both Dr. Banaji and Dr. Oetken opined that Burns

could sit for no more than five hours a day, which does not meet the requirement of sedentary work.

Burns has had three hearings in this matter, the District Court has twice remanded the case, and Dr. Banaji has issued three opinions stating that Burns cannot work. The MRI evidence and treatment records show that the ankle injury was disabling. The multiple errors in this protracted case by multiple ALJs (coupled with convincing evidence of disability) call for an immediate award of benefits. As the Eighth Circuit has held, an order remanding for an immediate award of benefits is appropriate when "the clear weight of the evidence" points to a conclusion that the claimant is disabled and further administrative review "would merely delay receipt of benefits." *Yandell v. Berryhill*, No. 3:16cv132-JTR (E.D. Ark. Aug. 15, 2017)(awarding benefits)(*quoting Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001)). In *Hutsell*, after three administrative hearings, three appeals to the Appeals Council and many psychological evaluations, with no medical evidence demonstrating that the claimant could engage in work on a sustained basis, the court remanded for an award of immediate benefits rather than "prolong [the] case into its second decade." *Id*. In this case, further examinations or medical source opinions are not necessary, and would merely delay a just resolution. Through the medical evidence submitted and by virtue of the opinions of Dr. Banaji and Dr. Oetken, Burns has shown he cannot perform even sedentary work and has been disabled for a portion of the relevant time-period.

The basis for an award of benefits is the RFC assessment, and the Court has searched the record for an RFC assessment which fully captures Burns's limitations. The Court finds that Dr. Banaji's first statement in 2014 offered a credible RFC that was supported by the evidence of pain, treatment, and functional limitations going forward. (Tr. at 585). For that reason, the Court directs

6

the Commissioner to award benefits from the date of that medical opinion (August 8, 2014) forward.

**IV. <u>Conclusion</u>:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to incorporate all of Burns's limitations, failed to fully develop the record, and did not give proper weight to treating physician opinions.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for an immediate award of benefits.

DATED this 9th day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE